FULWIDER, Appellant, v. BENDA, Respondent.

(253 N. W. 154.)

(File No. 7646. Opinion filed February 28, 1934.)

*W. J. Hooper,* of Gregory, for Appellant.

*Miller & Miller,* of Kennebec, for Respondent.

CAMPBELL, J. Plaintiff, having sued the defendant upon money demand, procured the levy of an attachment upon certain of defendant's property. Subsequently, on defendant's motion, an order was made in the court below dissolving the attachment, from which order plaintiff has appealed.

No procedural defects are claimed, and the entire controversy between the parties is as to whether or not the record shows sufficient grounds to justify the issuance of the attachment. The entire matter having been presented below upon affidavits, there is no presumption in favor of the determination of the learned trial judge (Smith v. Hart [1926] 49 S. D. 582, 207 N. W. 657; Royal Union Life v. Boynton [1928] 54 S. D. 85, 222 N. W. 596), and it becomes our duty to review the evidence and determine the question as though presented here in the first instance, bearing in

mind that the burden is upon plaintiff-appellant to prove the existence of statutory grounds by a preponderance of the evidence (Guaranty Bank v. Varland [1926] 49 S. D. 336, 207 N. W. 152).

▮ Appellant maintains that the record shows the existence of the fourth ground of attachment specified in section 2432, R. C. 1919, as amended by chapter 142, Laws 1923, to wit, that defendant-respondent has removed, or is about to remove, some of his property from this state with intent to defraud or delay his creditors.

Appellant loaned respondent $1,000 in April, 1931, taking respondent's note, due in one year, with interest at 8 per cent per annum. On that note respondent has paid the interest to April 27, 1933, together with $100 on the principal, and it was to collect the balance thereon that this action was instituted by the service of summons and complaint on September 12, 1933; the warrant of attachment not being applied for until September 22 or 23, 1933. The only affidavits submitted on the motion for dissolution of the attachment are those of the respective parties. According to respondent's affidavits, he is thirty-five years of age and has lived all his life in Lyman county, where he has been engaged in farming. During the past three years grasshoppers and drought have destroyed his crops; he has had little or no income, and his indebtedness has increased. He has built up a nice herd of cattle which he is unable to care for and feed. He owes a bank in excess of $2,250 secured by mortgage on his cattle, is indebted to a neighbor in excess of $500, owes a pasture bill on the cattle in the amount of $350, and some other small bills. He owns sufficient machinery, clear of incumbrance, to enable him to carry on farming operations satisfactorily, but can see no hope of getting anywhere excepting further in debt if he continues, under present conditions, to try to carry on farming operations in Lyman county. He conceived the idea that, if he could make proper arrangements, he would sell off his cattle, pay as much of his indebtedness as he could, take his farming equipment with him, and move to a farm in the state of Minnesota in the hope that his farming operations there might be more successful than had recently been the case in Lyman county. After the service of the summons and complaint in this case upon him, respondent called upon appellant, stated his situation fully and frankly to appellant, and told him

his intentions. He told appellant that it would cost him around $200 to move with his equipment to Minnesota, in addition to which he would have to have something to live on until he could raise a crop in Minnesota, but that out of the proceeds of the property which he intended to sell before removal he would pay appellant the interest on his debt and at least $300 on the principal thereof. Respondent expressly avers that his financial difficulties are due to no fault or lack of diligence on his part, and that he has no intention or desire to evade or delay payment of his obligations, and in fact that the purpose of his removal is an attempt to put himself in position to do what he has been entirely unable to do in Lyman county, to wit, make some money to pay his debts and get started again.

Appellant's affidavit is to the general effect that respondent had never told him of his contemplated removal of himself and property from the state until the present action was instituted, although he had heard rumors to that effect; that on the day the action was instituted respondent called on him and said that he was going to move to the state of Minnesota, where he had rented a farm and where he was about to ship his farming equipment; that appellant insisted that respondent either pay him the amount due or secure it in some way before removing his property from South Dakota, but that respondent advised appellant that he could not do this, and that he was thinking of going through bankruptcy and wiping out all his debts, but did intimate that, if he could make a satisfactory sale of his cattle before leaving, he might be able to pay appellant $300 on the principal of the debt; that the farming equipment of respondent was unincumbered and sufficient in value to satisfy appellant's demand if it remains in the state of South Dakota, but, if it is removed from the state, appellant does not know what will become of it, and he will have no security and nothing to which he can look for the satisfaction of his demand.

In a reply affidavit, respondent denies that he threatened or contemplates bankruptcy, states that he was advising appellant frankly and without concealment of his desires and intentions, and reiterates an entire lack of intention on his part to delay or defraud any creditor.

Immediately after his conversation with respondent on Sep-

tember 22, 1933, appellant applied for warrant of attachment, and levy was made the next day.

Considering the fact situation most favorably to respondent, we think it is fair to say that at the time the warrant of attachment issued in this case it was his intention to make arrangements to lease a farm in the state of Minnesota; to sell some of his property which was already incumbered, and out of the proceeds thereof to pay the incumbrances and such other of his debts as he could (including $300 to appellant), reserving for himself enough money to pay the expenses of removal to Minnesota and to meet his necessities until he could raise and market a crop in Minnesota; to take the remainder of his property, consisting principally of unincumbered farming machinery, with him to Minnesota. In other words, if respondent carried out his intentions, he would become a non-resident of this state and remove all his property from the state. He would be owing appellant $600 and some interest. He would remove out of the state some money and unincumbered property more than sufficient for the payment of appellant's past due demand. He would leave no property whatever in the state which could be reached by any process for the satisfaction of appellant's demand.

Appellant urges that the necessary result of the very conduct which respondent admittedly contemplates is and must be to delay and defraud his South Dakota creditors, particularly appellant. Respondent, on the other hand, maintains that his heart is good; that he wants to do the best he can, and does not wish or desire to evade or avoid moral or legal responsibility for his obligations or delay the payment thereof, and therefore that the statutory requisite of intent to delay and defraud creditors is lacking.

 The remedy of attachment is of great antiquity and almost universal existence. Its essential object is to make some provision for unsecured debts in cases where the means of satisfaction thereof are liable to be removed beyond the jurisdiction, or improperly disposed of or concealed or otherwise placed beyond the reach of creditors. The remedy is intended to have application in proper case when there exists or impends some conduct or course of action by the debtor adverse to the interests of the creditor which will, if fully consummated, hinder, delay, or prevent the collection of the debt. While it is true that the remedy is statutory and in

derogation of the common law, nevertheless strict construction should not be pushed to the extent of nullifying the beneficial intent of the statute or depriving the creditor of recourse thereto in proper case.

"* * * Though an attachment is an extraordinary remedy, which may be greatly abused by designing men—a remedy not known to the common law, and one, therefore, which courts should watch with scrupulous jealousy, inasmuch as its effects are so destructive to individual credit, and being one which clothes the creditor with such extraordinary power over his debtor's estate, that it should only be granted upon full and satisfactory evidence that the application is well founded—still, when a creditor fairly brings himself, by his application, within the spirit and intent of the statute authorizing this remedial and provisional remedy, he is to be protected in the enjoyment of its advantages." Rowies v. Hoare (1870) 61 Barb. (N. Y.) 266.

Attachment statutes almost universally permit the remedy in the case of removal of property from the jurisdiction by the debtor to the prejudice of the creditor. The fundamental object of the statutes is the same, although their phraseology varies considerably. Some statutes make the mere fact of removal of property ground for attachment without regard to intent; other statutes specify a removal "so as to hinder the plaintiff from collecting his debt"; or a removal "so that the plaintiff will probably lose his debt, or have to sue for it in another state"; or a removal of property from the state "not leaving enough therein to satisfy the claims of his creditors"; or removal "with intent to defraud" or "intent to hinder and delay" or "to the injury of his creditors." Whatever the precise phraseology, the legal principle upon which the statutes proceed is the danger of the loss of the debt or delay in its collection by reason of the removal—the defeat of the legitimate result of ordinary court process in the jurisdiction. Some distinction is drawn in the cases between the class of statutes which make the mere removal of property a ground for attachment and the class which make the intent of the debtor in removing a material element. See annotation, 30 L. R. A. 465 at page 471. Respondent particularly urges upon our attention the case of Piper v. Wade (1911) 28 S. D. 196, 132 N. W. 786, wherein this court said: "The gist of this ground for attachment is the removal of prop-

erty from the state with intent to defraud creditors. There must be some facts or circumstances shown from which such intent may be inferred. A person might leave the state and take his property with him, and still have no intention of defrauding his creditors. He might leave the state and take his property with him with perfectly honest intentions."

With reference to the Piper Case two observations should be made. In the first place, as appears from the opinion itself, the only showing was that the debtor was about to remove from the state. There was no showing whatever with reference to any removal of his property; it being stated in the opinion that "the affidavit * * * makes no reference whatever to the removal of defendant's property from the state." It follows, therefore, that anything contained in the Piper opinion with relation to removal of property as a ground for attachment is entirely obiter. In the second place, the statute in force at the time of the Piper opinion with relation to this particular ground for attachment was subdivision 4, § 207, Rev. Code Civil Procedure 1903, reading as follows: "That such corporation or person has removed, or is about to remove, any of his or its property from this state with intent to defraud his or its creditors."

Since that time the statute was amended by the Code Commission of 1919 to read (subdivision 4, § 2432, R. C. 1919): "When the defendant, either person or corporation, has removed or is about to remove any of his or its property from this state, with intent to defraud or delay his or its creditors"; the statute being subsequently carried forward without change in this regard by chapter 142, Laws 1923.

It will be observed that by this amendment the element of delaying creditors is now included in the statute as well as the element of defrauding. The intent with which a debtor acts or contemplates acting must doubtless be a question of fact in each particular case dependent upon the circumstances. It will be observed that our statute is not limited to removal of all the debtor's property, but specifically refers to the removal of "any of his property." Certainly if a debtor was removing only a small part of his property from this state, retaining ample property in the state to meet the demands of all his South Dakota creditors, it

would take a good deal of extrinsic evidence, beyond the mere fact of removal, to establish that his intention was thereby to defraud or delay his creditors; but, when a debtor seeks to remove all his property from the state, the situation is quite different. That such conduct will very certainly delay, if not actually defraud, his creditors in this state, seems too plain for argument. Nothing will remain in the state subject to process of our courts. We do not believe the creditor is compelled to stand by and see his debtor become a nonresident and remove all his property from the state, making no provision for the discharge of the debt and leaving nothing subject to South Dakota process, merely because the debtor throughout the entire proceeding keeps saying, "I owe you and mean to pay you and will pay you as soon as I can." The existence of such a frame of mind in the debtor, conceding that it does exist, cannot change the necessary and legal consequences of his conduct. When a debtor, without making adequate provision for the satisfaction of his creditors, is about to remove from this state all the property which he has (including unincumbered property sufficient to satisfy his creditors' demands), we believe such conduct is sufficient to establish, as a matter of law, the intent to delay (and perhaps to defraud) creditors contemplated by our statute, and ground for attachment exists.

We are therefore of the opinion that the learned trial judge erred in dissolving the attachment upon the record here presented, and the order appealed from is reversed.

All the Judges concur.