[File No. 6388.]

NORTHWESTERN MUTUAL SAVINGS & LOAN ASSOCIA-
TION, a Corporation, Respondent, v. PHEBE KESSLER,
Christ Kessler, Minnie Turner, H. E. Turner, and Bond Lumber
Company, a Corporation, Respondents,

and

BOND LUMBER COMPANY, a Corporation, Respondent-Appellant.

(268 N. W. 692.)

Opinion filed July 15, 1936.   Rehearing denied August 20, 1936.

*Shure & Murphy,* for appellant-respondent.
*F. B. Lambert,* for respondent-appellant.

Nuessle, J.   This action was brought to foreclose a real estate

mortgage. The mortgagors, Phebe and Christ Kessler defaulted. The defendant, Minnie Turner, claiming to be the owner of the property, answered. Her husband, the defendant H. E. Turner, interposed no answer. The defendant, Bond Lumber Company, answered, claiming a materialman's lien superior to the plaintiff's mortgage and praying a foreclosure thereof, and also counterclaimed asking for a personal judgment against the plaintiff. The plaintiff duly replied. The court found for the plaintiff as to the validity of its mortgage and the amount of its claim, and also found for the defendant lumber company, adjudging its lien to be superior to the lien of the plaintiff's mortgage, but found against the defendant lumber company on its counterclaim. Foreclosures were decreed accordingly. The plaintiff, dissatisfied with the court's determination that the lumber company had a lien and that the same was superior to the plaintiff's mortgage, appealed. The lumber company, dissatisfied with the court's denial of relief on its counterclaim, cross-appealed. No appeal was taken by the defendant Minnie Turner.

The facts material to the determination of the questions raised on these appeals are substantially as follows: The plaintiff is a building and loan association. It makes loans on real estate to be repaid in monthly instalments. One J. E. McKoane was its representative at Minot. The defendant Minnie Turner owned a lot in Minot. For some reason she placed the title to this property in the name of her sister, the defendant Phebe Kessler. Mrs. Turner wanted to erect a house on her lot. She arranged with the plaintiff to borrow $3,500. The requisite note and mortgage were executed. The proceeds of this loan were to be used in paying off a prior mortgage which the plaintiff held and on which about $1,000 remained unpaid, and the balance thereof was to be used in paying for labor and material to complete the house which Mrs. Turner proposed to build. The mortgage was dated October 1, 1930. It was placed of record on October 24. Mrs. Turner had begun the erection of her house some time prior to the execution of this mortgage. She had theretofore purchased some material from the defendant lumber company paying cash therefor. About October 18, her husband, acting as her agent, went to the lumber company and procured an estimate showing the cost of such material as she needed. The lumber company refused to sell to her unless

she paid cash. Turner told the company about her loan and said the proceeds thereof were to be used in paying for the material. He suggested that the company call up McKoane the representative of the plaintiff and verify this. The company did so. The testimony of the company's agent, which is practically undisputed, is as follows:

"Q. Did he (Turner) say where he was going to get the cash?
A. Yes.
Q. Where? A. From McKoane.
Q. At that time did you call McKoane up? A. I did.
Q. What was the conversation? A. I asked Mr. McKoane if arrangements had been made for a loan to the Turners and he says there has been. Well, I says, they have an estimate for material here and I didn't want to send out the material without I knew I would get the money. He said they are making a $3,500.00 loan and there will be plenty of money to pay for their material and it will be O. K."

Thereafter, relying on Turner's representations and on this conversation, the lumber company delivered two lots of material, each of the value of more than $200. It presented the bills therefor, together with receipts showing the delivery of the material signed by Mrs. Turner or her agent, to McKoane. The bills were at once paid by checks of the plaintiff association, signed by McKoane. Thereafter, further material was furnished but when the bill therefor was presented to McKoane he refused to pay the same for the reason that the proceeds of the loan were exhausted. He then advised the defendant lumber company that Mrs. Turner had agreed with the plaintiff to reduce the amount of the loan from $3,500 to $3,000 and so there was no more money available and the bills would not be paid. This reduction was made by crediting the amount thereof on the note. There is some dispute in the testimony as to how the reduction in the amount of the loan came to be made. McKoane testified that it was at the request of Mrs. Turner. Mrs. Turner testified it was at the suggestion of McKoane. In any event, the lumber company had no notice of the reduction or that there were no further funds available until after the material for which it now claims a lien was delivered to Mrs. Turner. At the time of the trial Mrs. Turner testified that she had obtained the lumber, that she wanted to pay for it, and was willing that such payment be made if possible out of the proceeds of the loan. Subsequent to the time

when the plaintiff refused to pay the lumber company, plaintiff paid certain items for labor incurred in the erection of the house and also certain items for plumbing and other material used therein. These payments aggregated something over $400.

After the defendant lumber company was advised that no money would be available out of the loan to pay for the material furnished by it, the company on May 12, 1931, took steps to perfect a mechanic's lien pursuant to chapter 91 of the Civil Code, being §§ 6814, et seq., Comp. Laws 1913, as amended, but never at any time filed a notice of intention to perfect a mechanic's lien with the clerk of the district court as required by § 6815, Comp. Laws 1913. Thereafter Mrs. Turner defaulted in her payments to the plaintiff and plaintiff brought this action to foreclose its mortgage.

The plaintiff's theory is that since the lumber company did not file a notice of intention to perfect a lien pursuant to the provisions of § 6815, it acquired no lien by virtue of the other steps taken in that behalf; that even though it has a lien valid as against Mrs. Turner, nevertheless such lien is not effective as against the plaintiff for the reason that the requirements of § 6815 were not complied with. On the other hand, the lumber company's theory is that under the circumstances as disclosed there was either an express or an implied promise as an original undertaking on the part of the plaintiff to pay the lumber company for any material that might be furnished by it and that accordingly the plaintiff became personally responsible to the company for the amount of the latter's bill for material; that the plaintiff had actual notice that the lumber company was furnishing material with which to erect the building and therefore the notice of intention to perfect the lien contemplated by section 6815 was unnecessary; that, in any event, the filing of such notice of intention is not a prerequisite to the creation of a valid lien as against the owner of the property with whom the contract for the material is made and to whom it is furnished; that even if it be necessary that such notice of intention be filed in order to enable the materialman to perfect a lien, valid and effective as against a mortgagee, the plaintiff, by its conduct in this particular case, is estopped to assert the priority of its mortgage as against the lumber company's lien since by reason of the representations of the plaintiff both by word and act the lumber com-

pany was induced to and did furnish the material which was used in enhancing the value of the plaintiff's security, and because of such representations did not take steps to lay the foundation for a lien or to perfect the same until the plaintiff refused to pay for the material thus furnished.

There is no question but that Mrs. Turner made an application to the plaintiff association for a $3,500 loan. This application was accepted. The $3,500 note and mortgage contract were drawn, executed and delivered, and the mortgage was recorded. There is also no question but that she advised the lumber company of the making of this loan and that the proceeds thereof were to be used in the building of the house on the mortgaged property. Neither is there any question but that the plaintiff association knew that the proceeds of the loan (except as required to pay off the prior mortgage) were to be thus used and that the lumber company had been so advised. The version of the conversation between the association's representative and the agent of the lumber company as given by the latter is practically undenied and is heretofore set out. Furthermore, pursuant to the arrangement made between Turner and the lumber company, and consistent with and because of this conversation, the lumber company furnished material to Turner, presented the bill therefor to the association in two instances and was paid therefor, and such payments were charged against the proceeds of the Turner loan. By agreement between the association and Turner, the loan was reduced from $3,500 to $3,000 without notice to or knowledge on the part of the lumber company. And when the subsequent items of lumber were furnished to Turner, the company acted in good faith and believed that the bill therefor would be paid pursuant to the conversation with McKoane and in the same manner as the prior bills had been paid.

In support of its counterclaim the lumber company urges that under all the circumstances as above disclosed there was an original undertaking on the part of the plaintiff association to pay for the material that the lumber company might furnish to be used in the erection of the proposed house by Mrs. Turner and that therefore the company is entitled to a personal judgment for the amount remaining unpaid. In this behalf the company cites and relies upon the case of Security Bldg. & L. Asso. v. Bacon, 62 N. D. 658, 244 N. W. 644. We think,

however, considering all of the facts and circumstances, it cannot be said that there was any original undertaking, either express or implied, on the part of the association to pay for the material in question. The most that can be said in that regard is that there was an assurance on the part of the association's representative .that a loan had been made· for the purpose of paying for lumber and material to be used in the erection of the proposed house and that the proceeds of such loan were. sufficient and would be available for such purpose. Accordingly, the trial court properly held that the defendant lumber company was not; entitled to a recovery on its counterclaim.

A mechanic's lien is purely a creature of statute. To entitle one to; such a lien the statutory requirements must be fairly complied with. North Dakota Lumber Co. v. Bulger, 19 N. D. 516, 125 N. W. 883; McCaull-Webster Elevator Co. v. Adams, 39 N. D. 259, 167 N. W., 330, L.R.A.1918D, 1036; Austad v. Dreier, 57 N. D. 224, 221 N., W. 1. Our statute providing for a mechanic's lien, §§ 6814, et seq., supra, has long been in effect. Originally, under its provisions, a materialman was entitled to a lien, if seasonably perfected, superior to all other liens or encumbrances (except liens for labor) upon the liened property filed or docketed subsequent to the commencement of the building or other improvement in which the material was used. Comp. Laws 1913, § 6822. This resulted in hardship and injustice in those cases where encumbrances were placed upon or conveyances made of the property after the commencement of the building or improvement and prior to the filing of the lien where the encumbrancer or grantee had no notice or knowledge of the facts which would warrant the perfecting of such a lien. Accordingly, in 1913, § 6815 was enacted. See chapter 209, Sess. Laws 1913. This enactment provides that every person entitled to have a mechanic's lien for material under the provisions of the lien statute and who wishes to secure the benefits thereof, must file with the clerk of the district court of the county in which the property on which the lien is to be claimed is situated, a notice of intention to perfect such a lien. The statute further provides "A mechanic's lien shall be void against the owner or holder of any mortgage or deed or conveyance whose mortgage, deed or conveyance shall have been filed and recorded prior to the filing for record of the herein prescribed notice of mechanics' liens." It is true that section 6814 provides that a lien

shall be had "upon compliance with the provisions of this chapter." But this was the wording of the original statute. Considering the history of the mechanic's lien statute and the wording of the provision last above quoted, it is manifest that § 6815 was enacted to protect grantees or encumbrancers affected by § 6822 as above set forth and that it was not intended that notice of intention to claim a mechanic's lien should be a prerequisite to the perfecting of a lien under the statute as against the person owning the property and erecting the building or improvement thereon and who had contracted for the material to be used therein. Given any other construction the statute would give no lien as against an owner whose deed was of record at the time he contracted for or obtained material. Accordingly, we are clear that in the instant case the defendant lumber company has a valid lien as against the defendant Turner who contracted for the material and who used the same in the construction of the house upon the property on which the company here claims a lien.

But we are equally clear that since the notice required by section 6815 was not filed prior to the recording of the plaintiff association's mortgage, such lien is inferior to the lien of the mortgage unless there be other facts and circumstances which result in an estoppel as against the association. The fact that plaintiff knew that the lumber company was furnishing material does not satisfy the requirement of this statute. Mere knowledge is not sufficient. See North Dakota Lumber Co. v. Bulger, 19 N. D. 516, 125 N. W. 883, supra.

Is the plaintiff association estopped to assert the priority of its mortgage over the lumber company's lien? We hold that it is except to the extent that the proceeds of the loan secured by the mortgage were used in discharging the earlier mortgage on the property. The estimate of material was made by the lumber company for Turner on October 18. Plaintiff's mortgage was filed for record on October 24. The record is somewhat indefinite as to the time when the conversation between the lumber company's representative and McKoane took place but it was at the time or shortly after the estimate was made because the first delivery thereunder was on October 24. Had the lumber company filed the notice required by section 6815 at that time the lien subsequently perfected would have been superior to plaintiff's mort-

gage here involved. And there is no question but that the lumber company furnished the material and refrained from taking steps to secure the payment of its claim therefor in reliance upon such conversation with McKoane. The material was used in making the improvement upon the property covered by the mortgage. Thus the plaintiff's security was enhanced at the expense of the lumber company. An estoppel may be raised where he who invokes it had the means in his possession of protecting his rights and, in reliance upon the words and conduct of the one against whom the estoppel is invoked and in consequence thereof, refrains from using those means and is thereby injured. See Continental Nat. Bank v. National Bank, 50 N. Y. 575; Pom. Eq. Jur. 4th ed. § 802, et seq., and cases cited. See, also, as instances where equitable relief was afforded under somewhat similar circumstances, Anglo-American Sav. & L. Asso. v. Campbell, 13 App. D. C. 581, 43 L.R.A. 622; Barnes v. Thuet Bros. 116 Iowa, 359, 89 N. W. 1085. But even if the statutory notice of intention to claim a lien had been filed by the lumber company, such lien would have been subject to the plaintiff's earlier mortgage which was discharged out of the proceeds of the mortgage here involved. The lumber company cannot ask to be put in a better position than it would have occupied had it used the means then available to protect itself. So to the extent that the proceeds of its mortgage were used in discharging the earlier mortgage, the plaintiff has a superior lien.

The case therefore will be remanded to the district court with directions that the judgment heretofore entered be modified in accordance with this opinion.

BURKE, Ch. J., and MORRIS, CHRISTIANSON and BURR, JJ., concur.