**QUALITY BUILDERS, INC., Plaintiff and Appellant,**

v.

**Martin C. HAHN and Florence C. Hahn, Defendants and Respondents.**

No. 8093.

Supreme Court of North Dakota.

April 22, 1965.

Thompson & Lundberg, Bismarck, for plaintiff and appellant.

Zuger, Zuger & Bucklin, Bismarck, for defendants and respondents.

MORRIS, Commissioner.

This is an action by the plaintiff, a supplier of building materials, to recover a judgment against the defendants for building materials and supplies alleged to have been furnished them in connection with the construction of three houses in the city of Bismarck and for the foreclosure of mechanics' liens on two of the houses. The action was commenced on May 22, 1961. On June 2, 1961, a warrant of attachment was issued against the defendants pursuant to which the sheriff of Burleigh County levied upon certain real property alleged to belong to the defendants, including the property described in the mechanics' liens. The case was tried to the court without a jury; judgment was rendered against Martin C. Hahn for $20,426.-11. The court determined that the mechanics' liens were invalid and ordered them discharged, and further directed the entry of judgment in favor of Florence C. Hahn discharging her from all personal liability. Subsequently and upon motion of the defendants the court entered an order dissolving and discharging the attachment. The plaintiff appeals from the judgment and from the order dissolving the attachment. A trial de novo is demanded. We first discuss the appeal from the judgment.

The plaintiff and appellant challenges the correctness of the judgment in discharging Florence C. Hahn from personal liability

and in holding the two mechanic's liens invalid. A better understanding of the issues requires further reference to the pleadings. The complaint presents three causes of action. The first alleges that the defendants purchased merchandise from the plaintiff from May 2, 1960, through October 11, 1960, worth the agreed and reasonable price of $3,018.23, which was used for the construction of a home located at 2214 Avenue E, Bismarck, North Dakota, and an additional amount of merchandise worth $203.29 on open account.

The second cause of action alleges that the defendants purchased lumber and other building materials from the plaintiff during the period of June 27, 1960, through October 10, 1960, at the agreed and reasonable value of $6,794.73, which were used to improve premises located at 2411 Avenue D, Bismarck, located on premises described as Lot 14, Block 2 of Lounsberry's Outlots 17 to 24, for which plaintiff filed a mechanic's lien dated January 4, 1961, recorded in Book 3, page 114, on January 14, 1961.

The third cause of action alleges the purchase of lumber and building materials by the defendants of the reasonable and agreed value of $9,113.16, from May 2, 1960, through September 29, 1960, for the improvement of premises located at 902 Twenty-third Street, Bismarck, North Dakota, situated on Lots 11 and 12, less the west two feet of the north fifty feet of Lot 12, all in Block 1 of Vision Heights Subdivision of Lounsberry's Bismarck Outlots No. 9 and No. 12, for which the plaintiff filed a mechanic's lien dated January 4, 1961, recorded in Book 3, page 114, on January 13, 1961. Judgment is demanded for the various amounts alleged in the respective causes of action. Foreclosures of the respective mechanic's liens described in the second and third causes of action are prayed for. The defendants' answer admitted that Martin C. Hahn purchased from the plaintiff goods, wares and merchandise for which he owes an uncertain amount and denies the amount alleged by the plaintiff. With respect to the other allegations of the complaint the defendants set forth a general denial. Neither the amounts found due to the plaintiff from Martin C. Hahn nor the total amount of the judgment rendered against him is questioned on this appeal by either the plaintiff or the defendants. The issues on the appeal from the judgment are whether there is any liability on the part of Mrs. Hahn and the validity of the mechanic's liens claimed by the plaintiff in its second and third causes of action.

The plaintiff concedes that Mrs. Hahn has no liability under the first cause of action and states in its brief that

"The only matter for determination is whether or not the defendant, Florence Hahn, has any personal liability under the plaintiff's second and third causes of action, the amount of which has already been determined."

During the trial plaintiff's counsel read into the record the following statement:

" * * * at this time we will stipulate that Mrs. Hahn has never talked with any person from Quality Builders, she has never been in the place of business, that the only information so far as our testimony was concerned, the only information that we have is that she is an owner of the premises. We have not ever represented that she has been to the place of business personally to contract any business, no member of the firm ever saw her until she was in the courtroom today, I believe."

The judgment roll contains a pre-trial order entered March 19, 1962, which in part states:

"It was stipulated between the parties as follows:

"(A) That the defendant, Florence Hahn, is not personally liable for any amount found to be due as claimed under plaintiff's cause of action No. 1.

"(B) The plaintiff does not claim a lien against Lot 12, Block 1 of Vision Heights Addition."

However, Lot 12 is included in the lien described in the third cause of action. Mrs. Hahn was called as a witness at the trial by plaintiff's counsel and gives this testimony:

"Q. * * * Now, Mrs. Hahn, did you know of your husband building on these properties?

"A. Yes.

"Q. You knew they were being improved even though you were a joint tenant in one case?

"A. Yes.

"Q. You knew the houses were going up?

"A. Oh, yes.

"Q. And you knew that he was buying lumber and other materials for them?

"A. Yes.

"Q. You made no objections to any of the materialmen.

"A. No."

After some colloquy between the court and counsel regarding the relevancy of this questioning the examination continued.

"Q. (By Mr. Thompson) I think that my questions can be limited to simply this: You do not dispute that the materials were placed on the premises, do you?

"A. No, I * * *

"Q. You know they are there.

"A. Yes."

Counsel for the defendant then was permitted to ask this question:

"Mrs. Hahn, when you say you knew materials were being bought, I take it you didn't know exactly what was being bought.

"THE WITNESS: No, I don't."

Abstracts of title to the various properties were before the trial court on stipulation but were not introduced in evidence and are not a part of the record of this appeal. However, from concessions made in the briefs it appears that the "one case" which is referred to in the testimony of Mrs. Hahn is the premises at 902 Twenty-third Street, referred to in the plaintiff's third cause of action.

Reference to the verified mechanic's lien filed against the 902 Twenty-third Street property shows that the account was kept only in the name of Martin C. Hahn, that the contract for the materials was made with him, and further states that a written demand for payment was made upon Martin C. Hahn on the first day of November, 1960. The only reference to his wife in the lien is the statement that "the name of the person in possession of said premises are Martin C. Hahn and Florence C. Hahn." Thus the wording of the lien indicates an intention to charge Martin C. Hahn alone for the materials furnished under the lien although his wife was named as one of the persons in possession.

On December 1, 1960, and before any liens were filed, but after the materials had been furnished, Quality Builders wrote Mr. Hahn as follows:

"We are faced with meeting obligations due December 15th, namely Federal and State taxes. We had planned on meeting these obligations from proceeds due us on your account.

"Hiring money from the local Bank without sufficient security on accounts is a thing of the past. The Bank will not lend unless an account is backed up with collateral. Unsecured accounts are not acceptable to obtain legal tender.

"Personally I think you can finance these homes for sale to a better advantage by securing money from you local lending agency., However, if we must carry a load, we will require a least a second mortgage untill houses or house has been sold. By working togather we can help one another out of a tight market situation untill such time as sales may pick up which we hope is very soon.

"We are sure you will agree that this is the only way to handle this situation."

■ The first indication of any attempt to communicate with Mrs. Hahn regarding either the debt or the liens is a notice before foreclosure of mechanic's lien addressed to both of the Hahns and served on them May 18, 1961. This is the ten-day notice required by Sec. 35–12–21 N.D.C.C. to be served upon the record owner of property affected by lien at least ten days before an action to enforce the lien is commenced. It warned of the foreclosure of the liens described in plaintiff's second and third causes of action. Our detailed review of the evidence leads us to agree with the trial court's conclusion that no personal liability has been established against the defendant Florence C. Hahn. Minot Plumbing & Heating Co. v. Bach, 44 N.D. 71, 177 N.W. 507.

We next consider the validity of the mechanic's liens pleaded in the second and third causes of action, both of which were filed in January, 1961.

Section 35–12–03, N.D.C.C. provides that

"Any person who performs or furnishes any labor or furnishes any materials for the improvement or erection of any building or other structure upon lands, or in making any other improvements thereon, under a contract with the owner of the land or with his agent, contractor, or subcontractor, or with the consent of the owner, upon complying with the provisions of this chapter, shall be entitled to a lien upon such building or other structure and upon the land on which the improvements are situated, or to improve which said work was done or materials furnished, to secure the payment for such labor and materials."

Section 35–12–04 N.D.C.C. provides that

"No person furnishing materials shall be entitled to a lien under this chapter unless he shall:

"1. Keep an itemized account thereof separate and apart from all other items of account against the purchaser;

"2. Make a written demand for payment of such account at least fifteen days prior to the filing of the lien; and

"3. File with the clerk of the district court of the county in which the land, building, or improvement is situated a notice in writing signed by the person entitled to the mechanic's lien or by his authorized agent stating:

"a. The name of the person in possession of the land;

"b. The description of the property to be charged with the lien;

"c. The date of the contract; and

"d. That a mechanic's lien against the building, improvement, or premises will be perfected according to law unless the account shall have been paid."

■ The defendant challenges the validity of the liens and contends that neither paragraphs 1 nor 2 of Sec. 35–12–04 were complied with and that such compliance is a condition precedent to the filing of valid liens. We consider the question of

compliance with paragraph 2 as controlling the validity of the liens in this case.

Since a mechanic's lien is purely a creature of statute the statutory requirements must be fairly complied with to entitle a person furnishing materials to a lien under the provisions of Chapter 35–12 N.D.C.C. Northwestern Mutual Savings & Loan Association v. Kessler, 66 N.D. 737, 268 N.W. 692; Schaffer v. Smith (N.D.), 113 N.W.2d 668. We would emphasize the applicability of this statement to paragraphs 1 and 2 of Sec. 35–12–04 N.D.C.C.

The requirement that the person furnishing materials should keep an itemized account separate and apart from other items of account against the purchaser first appeared in our mechanic's lien law in 1909. See Chapter 158 Session Laws N.D. 1909. That Chapter was amended by Chapter 187 Session Laws N.D. 1911 whereby the materialman was given a lien for materials

> "provided no person furnishing material, machinery, or fixtures for any of the purposes aforesaid, shall be entitled to a lien under this chapter unless he shall keep an itemized account thereof, separate and apart from all other items of account against the purchaser, and has made a written demand for payment of such account at least fifteen days prior to the filing of the lien, * * *."

These provisions have been retained as a part of our mechanic's lien law and are now paragraphs 1 and 2, Sec. 35–12–04, above quoted. It is clear to us that these provisions as originally enacted and as we now find them, set forth conditions precedent to the acquisition of a valid lien by a person furnishing materials for which a lien is claimed.

■ The appellant contends that the letter of December 1, 1960, which we have heretofore quoted in full, is a written demand for payment which complies with the statute. A careful study of this letter leads us to the conclusion that it is not a demand

for payment. It does not refer to an account for materials furnished with respect to any particular property but rather to the general account. The evidence shows that Martin C. Hahn made purchases on account of materials for several properties and that materials were delivered to four construction sites. The accounts attached to the liens embrace the material delivered to two of the sites. The letter also suggests the possibility of a second mortgage to be given to the appellant. Giving the letter all inferences favorable to the contentions of the appellant, it does not comply with the statute as a written demand for payment of either or both of the lien accounts. The failure of the plaintiff to make the written demand required by Section 35–12–04, paragraph 2, N.D.C.C. is fatal to the liens and compels affirmance of the judgment with respect thereto.

■ We now consider the appeal from the order dissolving the attachment. On June 2, 1961, a warrant of attachment was issued to the sheriff of Burleigh County in accordance with the provisions of Section 32–08–05, N.D.C.C., based upon an affidavit dated May 31, 1961, setting forth the grounds for attachment provided in Section 32–08–01, paragraph 4, N.D.C.C. Pursuant to the warrant, the sheriff, on June 6, 1961, levied upon various tracts of real property in Burleigh County owned by one or both of the defendants. A motion was made by the defendants to discharge the attachment. A hearing was had, and on February 21, 1963, the court entered its order setting aside the attachment. It contains this recitation:

> "The court finds that on or before May 31, 1961, the defendants did not sell, assign, transfer, secrete or otherwise dispose of, and were not about to sell, assign, transfer, secrete or otherwise dispose of, their property with intent to cheat or defraud their creditors or to hinder or delay them in the collection of their debts. It appears to the court that the affidavit upon which the attachment

was issued and the ground for attachment stated therein is untrue."

The defendants filed affidavits challenging the truth of the affidavit upon which the warrant of attachment was issued which raised the issue of fact as to whether or not the defendants acted with fraudulent intent. Upon the issue of fraudulent intent of the defendants, or either of them, the burden of proof rests on the plaintiff. Gamble-Robinson Minot Co. v. Mauratis, 55 N.D. 616, 214 N.W. 913; Page v. Steinke, 60 N.D. 685, 236 N.W. 261; Fulwider v. Benda, 62 S.D. 400, 253 N.W. 154, 92 A.L.R. 961; Guaranty State Bank of Sisseton v. Varland, 49 S.D. 336, 207 N.W. 152.

■■■ The defendant, Martin C. Hahn, obtained from a building and loan association four real estate loans, in which his wife joined, on properties in the city of Bismarck on which he built residential structures. His chief supplier of material and largest unsecured creditor was the plaintiff. One of the properties, a house at 2214 Avenue E, was owned by the Hahns as joint tenants. Mr. Hahn was sole owner of the others. We have, on the appeal from the judgment, affirmed the determination of the trial court that Mrs. Hahn has no liability in the main action. Attachment is a provisional remedy, Section 32–01–10 N.D.C.C. It is ancillary to the main action. The object of the attachment is to take the defendants' property into legal custody and hold it for the payment of a judgment in event judgment is rendered in favor of the plaintiff. Kohler v. Cole, 79 N.D. 226, 55 N.W.2d 589. If the defendant recovers judgment against a plaintiff in the action the warrant must be discharged and the property released. Section 32–08–28 N.D.C.C. See also 6 Am.Jur. 2d, Attachment, § 11; 7 C.J.S. Attachment § 2. Judgment having been rendered for a dismissal of the action as to Florence C. Hahn it follows that the attachment must fall as to her.

The loans from the building and loan association, above referred to, were obtained over a period of time from August 5, 1959, to June 27, 1960. The total amount of the four loans was $52,000. The accounts of the loan company show disbursements to Martin C. Hahn and various other persons and firms, including the plaintiff. The last of these disbursements was September 14, 1960. Up to that time Mr. Hahn had drawn $17,293.46 of the loan funds which he deposited in the First National Bank of Bismarck, and up to that date had paid to the plaintiff $4,447.95, leaving a balance due to the plaintiff on his account of about $19,000.

The plaintiff also contends that Mr. Hahn sold two of the mortgaged houses for which the plaintiff had furnished much of the building material and did not pay or account to the plaintiff for any of the proceeds of the sales. However, defendant Hahn contends that he did not receive the proceeds of these sales until after May 31, 1961, which was the date of the affidavit of attachment. He repeatedly testified that the proceeds of the loans and the proceeds that he received from the sales of the houses were paid to his various creditors. The evidence produced by both sides to this controversy is disconnected, fragmentary and unsatisfactory. The trial court admonished counsel to become more specific in the production of evidence and the questioning of witnesses, but to little avail. For example, the court said to plaintiff's counsel,

"Well, do you have any evidence to show that the difference between the money that he received and the money he has so far accounted for wasn't given to other creditors, for example, or paid on other debts or just exactly what evidence did Mr. Harvick have in mind when he made this affidavit out? That's what we are here to find out today, to see if there is any evidence that he had either sold property, assigned it, transferred it or secreted it at the time of this affidavit. That's the gist of the whole proceedings."

Plaintiff's counsel replied,

"Well, I have nothing more than what I have stated, that we as builders

in the building business know reasonably well what the houses sold for."

Similar colloquy involving the court and both counsel covers fourteen pages of the transcript at this point. The court finally said to the defendant:

"But can you get your cancelled checks for the last few years, Mr. Hahn, make those available?"

After further discussion the court directed:

"Mr. Hahn, you will obtain your banking records now pertaining to these accounts from the First Federal, make them available to Mr. Thompson, and do that immediately."

The court then recessed, the hearing was continued the following day, when Mr. Hahn resumed the witness stand and the following took place:

"Q. (By Mr. Thompson) Now, Mr. Hahn, yesterday you and I and Mr. Bucklin went through your statements which you received from the First National Bank during the period roughly from September, 1959, through February of 1961, and I believe that you borrowed some $20,000 from the First National Bank and there were payments on notes to the First National Bank. You may simply state what those payments were.

"A. I don't remember. For paying bills. That's all I remember. When I needed money I got money, borrowed it on a note from First National, to pay bills.

"Q. Now, do you have any explanation, Mr. Hahn, why Quality Builders was only paid the sum of $4,447.95 on these four units?

"A. No."

The witness was then excused. The checks and statements were not introduced in evidence and we find no further reference to them in the record. There was no complaint that Hahn had not complied with the directions of the court or any request for the production of further records pertaining to the disposition of the proceeds of the loans or the proceeds of the sales of the properties.

Mr. Hahn testified as to the sale of the property known as the Hjelle house, that

"My first obligation was with First Federal of Bismarck here, they had a loan on it, and then the balance was to pay off some indebtedness at the bank and then for operating expense to pay my help which I had paid every week as we built."

His testimony as to the disposition of the proceeds of the sale of the "Porter house" was that it went for a payment to the First Federal Loan which held the mortgage and that payments were made to Quality Builders, Dakota Flooring, Tracy Heating, the First National Bank, Thompson Plumbing, and for real estate taxes.

As to the sales of the houses at 2411 Avenue D and 902 Twenty-third Street in Bismarck, Mr. Hahn testified that negotiations for the sale of these properties had been in progress some time before May 31, 1961, the date of the affidavit for attachment, and that before that date Mr. Hahn's attorney had notified his creditors by letter of the pending sales. They had been sold before May 31 but no money had been received and that at all times he felt that he had sufficient property to pay off all of his creditors.

According to the testimony of the plaintiff's assistant manager he asked Mr. Hahn if he would give a second mortgage on his properties but Hahn refused unless all of his other creditors were included, and Quality Builders would not agree to that.

Shortly before the attachment proceedings were brought, Hahn met with his creditors on two occasions. The first was in April, 1961, and the second was on May 23, 1961. The debtor's assets were discussed

585

but apparently no settlement was reached. The record does not reveal details of the proposals made at those meetings.

The plaintiff complains, with some justification, that, although it was the major supplier of materials that were used by Hahn in building the houses mortgaged to the building and loan association and later sold, other creditors were preferred to the plaintiff when payments were made from the proceeds of the loans and the subsequent sales. In this state payment of one creditor in preference to another is permitted in most instances.

"A debtor, except as otherwise provided in section 13–01–09, may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." 13–01–03 N.D.C.C.

Preferences are not a badge of fraud and standing alone do not constitute a ground for attachment. Reiling v. Wood, 202 Minn. 576, 279 N.W. 579; Douglas Public Service Corp. v. Leon, 196 La. 735, 200 So. 21; Hord v. Green, 241 Ky. 641, 44 S.W.2d 549; Farmers Cooperative Ass'n v. Kotz, 222 Minn. 153, 23 N.W.2d 576, 6 Am.Jur. 2d, Attachment and Garnishment, § 240; 7 C.J.S. Attachment § 47.

The syllabus in Page v. Steinke, 60 N.D. 685, 236 N.W. 261, states:

"Where an attachment is issued upon an affidavit stating as a ground for attachment 'that the defendant has sold, assigned, transferred, secreted, or otherwise disposed of, or is about to sell, assign, transfer, secrete or otherwise dispose of, her property, with intent to cheat or defraud her creditors, or to hinder or delay them in the collection of their debts,' and the existence of this ground for attachment is denied by the defendant, upon a motion to discharge the attachment, the plaintiff has the burden of establishing the alleged fraudulent intent as a matter of fact."

At the close of the hearing on the motion to dissolve the attachment the trial court commented on the evidence and held that it was insufficient to show that Martin C. Hahn acted with fraudulent intent and that, while he may have paid money to other creditors in preference to the plaintiff, such acts on his part did not constitute grounds for attachment as set out in the affidavit. We agree with the trial court. The judgment and the order appealed from are affirmed.

PER CURIAM.

The foregoing opinion by the Honorable James Morris, a retired judge and duly appointed and qualified Commissioner of the Supreme Court, is adopted and made the opinion and decision of the Court.

BURKE, C. J., and STRUTZ, TEIGEN and ERICSTAD, JJ., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.